IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALIDA ARIZMENDI-CORALES, et al

**Plaintiff(s)**

**v.** **CIVIL NO.** 97-2140 (JAG)

HON. FRANCISCO JAVIER RIVERA, et al

**Defendant(s)**

'01 OCT 19 PM 3:27
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.
RECEIVED & FILED

**OPINION AND ORDER**

Defendants Francisco Rivera Toro ("Rivera Toro") and the Municipality of Hormigueros ("Hormigueros")(collectively, "defendants") filed a motion for summary judgment on the federal claims in plaintiffs' Complaint, brought under 42 U.S.C. § 1983 and 1988, for alleged violations of the plaintiffs' First, Fifth and/or Fourteenth Amendment rights under the United States Constitution.[1]

Plaintiffs contend that they were fired or demoted from their jobs with the municipality because they supported defeated mayoral candidate Rafael Montalvo during the Popular Democratic Party's primaries and the 1996 general election (in which Montalvo ran as an independent candidate) won by Rivera Toro. Defendants respond that the personnel actions they undertook were entirely lawful and

---

[1] Defendants have not sought summary judgment on the plaintiffs' state law claims brought under the Puerto Rico Constitution, Article II, §§ 1, 4, 6, 7, and 8, Public Law 100, 29 L.P.R.A. § 146 <u>et seq.</u>, and Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142.







proper. They claim that an evaluation process conducted by a team of consultants revealed that plaintiffs' appointments - as well as others - had been made in violation of the Law of Autonomous Municipalities, 21 L.P.R.A. §§ 4000 et seq., and they acted in conformity with that statute when carrying out the adverse employment actions. Upon review of the record, the Court grants the motion with respect to the due process claims, and denies it with respect to the First Amendment claims.

**FACTUAL BACKGROUND**

Rivera Toro was elected mayor of Hormigueros in November, 1996. (Parties' Joint Statement of Material Facts For Use In Consideration of Summary Judgment Motions, Docket 81, ¶ 2). Prior to the 1996 elections, the Popular Democratic Party ("PDP") held mayoral primaries, in which Rivera Toro defeated Rafael Montalvo. Id. at ¶ 3. Montalvo decided to run again, as an independent candidate, in the general elections. Id. at ¶ 4. He again fell short. All plaintiffs supported Montalvo in the PDP mayoral primaries and in the general elections. Id. at ¶ 5. As of January, 1997, all plaintiffs were employed by the municipality, and were publicly identified members of the PDP. Id. at ¶ 1.

On February, 1997, Hormigueros retained the firm of Guerra, Chiesa & Rivera, Inc., consultants in administration and human resources, to conduct an evaluation of certain municipal employees. Id. at ¶ 13. Guerra and Chiesa reviewed the personnel files of

sixty municipal employees who had been recruited or appointed to career positions after August 30, 1991 (the date in which the Law of Autonomous Municipalities was enacted). Id. at ¶ 17. The consultants reviewed the personnel files to determine whether the municipality had followed the process of recruitment, selection and competition mandated by law when making the appointments. Id. at ¶ 18.

The consultants concluded that 29 out of the 60 employees had been appointed to their positions illegally. Id. at ¶ 19, 20. The group of 29 included municipal employees who became part of Rivera Toro's "trust team" after January, 1997. Id. at ¶ 21. Seventeen of the 29 employees brought suit against defendants. Id. at ¶ 20. Two plaintiffs have been dismissed; fifteen presently remain. See Docket Nos. 105, 109.

Guerra and Chiesa notified their findings to the municipality, prepared the draft "letters of intention" to be sent out to affected employees informing them about their illegal appointment. Id. at ¶ 22. The letters also informed them that the municipality would hold a hearing prior to taking any adverse action. Id. Most plaintiffs attended the hearings accompanied by a lawyer.

After reviewing the recommendations contained in Guerra and Chiesa's and the hearing officers' reports, Rivera Toro issued letters to all plaintiffs informing them about the municipality's decision to take adverse employment action against them. Some were

dismissed from their jobs, others were demoted and returned to their previous career positions, following a salary adjustment. Id. at ¶ 24.

As to the remaining 12 (out of 29) employees whom the municipality determined had illegally attained their career posts, several were later appointed to trust or transitory positions in Rivera Toro's administration. Id. at ¶ H. The parties disagree as to how many; defendants claim that some, but not all, of the 12 employees were rehired. Plaintiffs claim not only that all were rehired, but that none of the employees who openly supported Rivera Toro or remained politically neutral were effectively affected, as they were promptly re-hired and suffered no downward salary adjustments. Id. Plaintiffs maintain that the evaluation and review process was a sham designed to oust those employees who opposed Rivera Toro, and that the municipality's actions ultimately affected *only* them - precisely as defendants intended it.

**DISCUSSION**

The standard for summary judgment is governed by Fed.R.Civ.P. 56. The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.

2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A properly supported motion can be survived only if the non-moving party shows that a trial worthy issue exists. The party opposing the motion cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every controversy is sufficient to preclude summary judgment. The fact has to be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of a suit. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Consequently, in order to defeat the motion, the party opposing summary judgment must present competent evidence supporting its position. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F. 2d 5, 8 (1st Cir. 1990).

**A. DUE PROCESS**

Plaintiffs contend that the personnel evaluations were made along political lines, with the intent to discriminate against plaintiffs, and with the result that only Rivera Toro's opponents suffered any "real adverse consequences." (Plaintiffs' Opposition, Docket 88, at 17). Defendants respond, first, that none of the plaintiffs had acquired a property interest in his or her employment, and therefore did not have any due process rights. Second, they contend that even if plaintiffs did have due process rights, they afforded plaintiffs notice and a hearing, and thereby provided all the process that was due. (Defendants' Motion, Docket 83, at 58-59).

The Due Process Clause guarantees public employees with a property interest in continued employment the right to a pre-termination hearing. See, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). For plaintiffs to have a due process claim, they must have a property interest in their positions. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). The question of whether a person has a constitutionally protected property interest is answered by an

independent, extra-constitutional source such as state law. See, e.g., Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990). Under Puerto Rico law, a career position is a constitutionally protected property interest. Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988). That property right is void, however, if the employee acquired the career position through a violation of the Puerto Rico Personnel Act. Id.

Here, it is uncontested that all plaintiffs received notice and a hearing before the government undertook any adverse employment action. Thus, even if the plaintiffs could show that they *had* a properly-acquired property interest in their employment, they received the procedural protections afforded by the due process clause. This case differs from the scenario where a public employee is summarily dismissed without receiving notice or an opportunity to be heard. See, e.g., Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 334 (1st Cir. 1993)(plaintiff never received a hearing prior to demotions or transfers); Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 100 (1st Cir. 1997)(plaintiffs were not afforded a hearing or opportunity to be heard prior to demotions). In those circumstances, courts have delved into the question of whether the plaintiffs have a property interest in their job, because the answer determined whether they were entitled to receive the procedural protections guaranteed by the due process clause. Here, even if the Court were to find that the plaintiffs

*did* have a valid property interest, they have no further remedy under the due process clause, for the defendants afforded them all the process that was due. Accordingly, the due process claim must be dismissed.

**B. FIRST AMENDMENT**

Defendants contend that, because plaintiffs allegedly have no property interest in their employment, and therefore have no due process rights, they cannot prevail on their First Amendment claim. Defendants' attempt to intertwine the plaintiffs' due process and First Amendment claims is unavailing. The First Circuit has consistently held that "[t]here is a distinct difference between a municipal employee's right to a due process hearing on termination and the employee's first amendment right to free political speech and association." Santiago-Negron v. Castro-Davila, 865 F.2d 431, 436 (1st Cir. 1989).

The plaintiffs' First Amendment claims are not dependent on the merits of their due process claims. See Acosta-Orozco, 132 F.3d at 104 (1st Cir. 1997); Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997). Whether or not plaintiffs had a property interest in their employment is irrelevant to their First Amendment claim of political discrimination. See, e.g., Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 n. 5 (1st Cir. 1993). Even evidence that an employee's appointment was null *ab initio* under Puerto Rico

law does not control a claim alleging a violation of an employee's First Amendment right of political affiliation.

The First Amendment "prohibits the termination of [a] public employee because of [his or her] political affiliation unless the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Nieves-Villanueva, 133 F.3d at 97 (citing Branti v. Finkel, 445 U.S. 507, 518 (1980))(internal citations omitted).

Here, plaintiffs are municipal employees who allege they were fired or demoted for purely political reasons in violation of their First Amendment rights. The thrust of defendants' argument is that since plaintiffs were not hired in conformity with Puerto Rico laws and personnel regulations, their appointments were nullities and they could not be discharged or discriminated against because they had no legal existence as municipal employees. As the First Circuit has noted, however, "a new administration [cannot] use the 'nullity' of appointments doctrine as a cover for discharges, transfers, and discrimination based solely on political affiliation." Acosta-Orozco, 132 F.3d at 103 n. 4; Santiago-Negron, 865 F.2d at 436.

To establish a *prima facie* case of political discrimination, plaintiffs must produce sufficient evidence to allow a rational jury to find that their political affiliation was a substantial or motivating factor behind the adverse employment decisions. See,

e.g., Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 28 (1st Cir. 1998). To meet this burden, plaintiffs need not produce direct evidence of a politically-based discriminatory animus. See Acosta-Orozco, 132 F.3d at 101-02. Plaintiffs may establish a discriminatory animus with circumstantial evidence alone. Id. Plaintiffs must show that there is a causal connection linking defendants' conduct to their political beliefs. See LaRou v. Ridlon, 98 F.3d 659, 662 (1st Cir. 1996).

Viewed in the light most favorable to the plaintiffs, the record shows that a rational fact-finder could conclude that the adverse employment actions stemmed from a discriminatory animus on defendants' part. All plaintiffs played prominent roles in the political activities of the Montalvo primary and general election campaigns. Moreover, the plaintiffs appear to have been outspoken in their support for Montalvo, and defendants appear to have been aware of that.

Plaintiffs also contend that, in response to their political opposition, Rivera Toro sought to discriminate against them by engineering a sham evaluation process that allegedly brought about adverse effects only to those who opposed him. Plaintiffs also claim that defendants were conveniently selective in deciding whose personnel transactions were to be reviewed. Plaintiffs further contend that Rivera Toro evinced his discriminatory animus on the very first day of his administration, when he ordered plaintiff

Rodriguez Santiago out of his position because "that fat guy belongs to [Montalvo]." (Docket 88, at 22-23). The evidence proffered by plaintiffs is sufficient to establish a *prima facie* case of political discrimination.

Once the plaintiffs meet their burden of establishing a *prima facie* case, the government employer must articulate a nondiscriminatory basis for the adverse employment action and must prove by a preponderance of the evidence that the employment action would have been taken without regard to the plaintiff's constitutionally protected conduct. See Rodriguez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998)(citing Mount Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977)). The burden of persuasion is on defendants to establish a Mount Healthy defense. Summary judgment would be warranted only if defendants' proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the adverse employment actions. See Acosta-Orozco, 132 F.3d at 103.

Defendants contend that they carried out the evaluation process upon the recommendation of the Transition Committee's report, which suggested that several personnel transactions were made in violation of the Autonomous Municipalities Law. They also contend that their independent consultants examined the files of all municipal employees who acquired career positions since August 30, 1991, and found that 29 of the 60 employee appointments were

nullities, because they were made in violation of the Autonomous Municipalities Act. The 29 employees whose career positions were found to be null *ab initio* were separated from their career positions whether they supported Rivera Toro or not. With respect to plaintiffs' claim that all but Rivera Toro's opponents were later given trust or transitory positions, defendants argue that it is the mayor's prerogative to exercise his discretion when hiring trust employees, and that is precisely what he did here.

The Court finds that there are genuine issues of fact that preclude summary judgment on plaintiffs' First Amendment claims. Viewing the evidence in the light most favorable to the plaintiffs, a reasonable jury could find that defendants utilized the "nullity of appointments" doctrine as a cover to discriminate against those municipal employees who opposed Rivera Toro, and used the evaluation process to disguise his discriminatory intent. Accordingly, the Court denies defendants' motion on this score.

There is an additional item that the Court will address at this stage, since it will likely affect the remedies that may be available for the plaintiffs, should they prevail on their First Amendment claims. In its discussion of plaintiffs' due process claim, the Court did not need to address plaintiffs' property interest claims. In the context of plaintiffs' First Amendment claim, however, the question becomes important, because it can have

an effect on the scope of remedies available to those plaintiffs who show a putative property interest in their job.

The First Circuit has held that "[o]ne of the remedies available for a political discharge in violation of the First Amendment is reappointment." Velazquez v. Figueroa-Gomez, 996 F.2d 425, 428 (1st Cir. 1993) (quoting Santiago Negron, 865 F.2d at 437). The First Circuit has rejected the notion that finding a violation of First Amendment rights leads *a fortiori* to reinstatement, and has recognized that the application of the remedy lies within the Court's discretion. Velazquez, 996 F.2d at 428. The Court must apply its discretion on a case-by-case basis, "with a keen eye to the many factors in the balance." Id. There are a number of special considerations that may influence the Court in specific cases, including: "(1) the strength of the evidence proving the first amendment violation; (2) whether the discharged employee has found comparable work; (3) the absence of a property right in the position because the employee was hired in violation of local law; and (4) the ineligibility of the employee for the position, due to failure to meet established qualifications, which would permit immediate discharge for no reason or for any permissible reason." Id. at 429.

The Court has reviewed the summary judgment record and concludes that, as to all but three plaintiffs, there is no genuine dispute of material fact that they lacked a property interest in

the career positions to which they were appointed.[2] They have not proffered evidence sufficient to defeat defendants' motion on the question whether their appointments complied with the strictures of the Law of Autonomous Municipalities. See, e.g., Colon v. Municipio de Ceiba, 112 D.P.R. 740 (1982)(employee that did not compete with other candidates for a position, did not take any test or never was included in register of eligibles did not acquire permanent career status).

There are three plaintiffs, however, as to whom there is a genuine dispute of material fact on the question whether they had a property interest in their employment: (1) Alida Hermida Mass, (2) Paul Torres Benitez and (3) Ramon Napoleoni Mendret. As to these three plaintiffs, there are questions of material fact regarding their qualifications, which were offered as the reason justifying their dismissals. Defendants claim that they did not

---

[2] There are three additional plaintiffs (Ramon Quiñones Juarbe, Marilyn Jusino Freyre and Santiago Montalvo Ramos) who are differently situated to the other twelve. These plaintiffs requested voluntary demotions to their prior career positions. Following their return to their previous posts, however, they found that the defendants had allegedly adjusted their salaries impermissibly. The question involved in those cases is not whether they were unfairly deprived of a property interest in their employment (so as to trigger reinstatement as an available remedy); rather, the question is whether the salary adjustments were justified. If these plaintiffs can show that defendants discriminated against them when adjusting their salary - for example, by showing that other, similarly situated employees did not suffer the same fate - this could affect the measure of damages to which they might be entitled should they succeed in proving their First Amendment claim.

meet the minimum requirements for the position, plaintiffs contend otherwise, and the summary judgment record is unclear. A genuine dispute of material fact as to whether a person's minimal qualifications comport with the Puerto Rico Personnel Act precludes summary judgment. See Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 334-35 (1st Cir. 1993)(where plaintiff had not received a pre-demotion hearing, genuine issues of material fact as to plaintiff's qualifications precluded summary judgment on due process claim).

**C. QUALIFIED IMMUNITY**

Lastly, having determined that plaintiffs have established a genuine dispute of material fact with respect to their First Amendment claim, the Court must analyze the two latter prongs of the three-part test to determine whether qualified immunity is available as a defense to a state officer sued under § 1983. The Court must first determine as it has done, whether the violation of a constitutional right has been properly presented. Then, and only then, may the Court determine whether the violated right was "clearly established" when the alleged violations took place. Finally, if these two hurdles are overcome, the Court must determine whether the state officer would have understood that the challenged conduct violated the plaintiff's clearly established rights. Saucier v. Katz, 121 S.Ct. 2151, 2155-57 (2001).

Qualified immunity shields government officials performing discretionary functions from civil damages insofar as their conduct

does not violate a clearly established statutory or constitutional right which should have been known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability' by attaching liability only if '[t]he contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" United States v. Lanier, 520 U.S. 259, 270 (1997). The Supreme Court has emphasized that a § 1983 plaintiff must allege a violation of a clearly established right secured by the Constitution or some other federal law. Camilo-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998).

If no violation of a clearly established constitutional right is found, then the analysis halts because "there is qualified immunity." Aponte Matos v. Toledo Davila, 135 F.3d 182, 187 (1st Cir. 1998). "The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second, if the right was clearly established, is whether a reasonable officer in the same situation would have understood that the challenged conduct violated that established right." Id. at 186. A state actor claiming qualified immunity must do so either under a theory that the asserted constitutional right was not clearly established or under the

theory that his conduct satisfies the test of objective legal reasonableness. Camilo-Robles, 151 F.3d at 5-6.

The qualified immunity standard is an objective one. See Crawford-El v. Britton, 523 U.S. 574, 590 (1998). The granting of summary judgment based on objective reasonableness grounds of the qualified immunity defense is not appropriate where, as here, there is a factual issue as to an essential element of plaintiff's claim that bears on the determination of the objective reasonableness of the defendants' actions.[3] See Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997)

Hence, the Court turns to the facts to objectively determine the reasonableness of defendants' conduct. The Court has thoroughly examined the evidence proffered by plaintiffs, and concluded that there are factual issues as to the nature of defendants' conduct, as well as to the motivation behind their conduct, with respect to the actions they undertook in 1997.

After affording plaintiffs every reasonable inference that can be made from the record, as the Court must do at this stage, the Court concludes that there are factual issues as to the essential elements of plaintiffs' First Amendment claim that preclude the Court from bestowing defendants with the protections afforded by

---

[3]It is beyond peradventure that plaintiffs' First Amendment rights not to be discriminated because of their political beliefs had been clearly established when defendants took the adverse employment decisions. Hence, we proceed directly to the second part of the qualified immunity test.

the qualified immunity defense. The facts on record, when viewed objectively, permits a finding that defendants knew or should have known that their conduct violated clearly established statutory or constitutional rights of the plaintiffs.

**CONCLUSION**

For the foregoing reasons, the Court grants the defendants' motion for summary judgment as to the Due Process claims, and denies the motion as to the First Amendment claims.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 19th day of October, 2001.

JAY A. GARCIA-GREGORY
U.S. District Judge